ASH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jamil Addullah Al-Amin,<br>　　　　　Petitioner,<br>v.<br>Unknown Party,<br>　　　　　Respondent. | No. CV 21-00200-TUC-JCH (MSA)<br><br>**ORDER** |

**I.　Background**

On May 12, 2021, Petitioner Jamil Addullah Al-Amin, who is confined in the United States Penitentiary in Tucson, Arizona (USP-Tucson), filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[1] By Order dated May 25, 2021, the Court noted that 28 U.S.C. § 2254 provides that a federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a *State* court only on the grounds that he is in violation of the Constitution of laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). Citing *United States v. Al-Amin*, 1:2017-CR-00414 (S.D.N.Y. 2017), the Court concluded that Petitioner was incarcerated pursuant to the judgment of a *federal* court, and that § 2254 thus could not provide a basis for relief. As such, the Court dismissed the Petition and this action. Judgment was entered the same day.

---

[1] Petitioner also referenced 28 U.S.C. § 2241 as a basis for relief in his original Petition.

On June 11, 2021, Petitioner filed a Motion for Reconsideration of the Court's dismissal, averring therein that he "was convicted in the State of Georgia in the year of 2000 on a murder conviction, and was placed in the [Federal] Bureau of Prisons system [] even though [he is] a state prisoner." By Order dated June 22, 2021, the Court found that its citation to *United States v. Al-Amin*, and resultant finding that Petitioner is a federal prisoner, was in error and accordingly vacated the May 25 Judgment. However, the Court noted that although Petitioner had brought this action as a petition for habeas corpus, his claims were directed at, as Petitioner himself put it, "the conditions of his incarceration"—namely, the risk to his health and safety due to the ongoing COVID-19 pandemic—and that "such claims traditionally sound in civil rights, not habeas." (Doc. 6 at 6). Observing that although "[h]abeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement" rather than the conditions of confinement, the Court noted that "the United States Supreme Court, however, has neither explicitly nor implicitly foreclosed the use of habeas corpus for conditions-of-confinement claims," and that

> [t]he novelty of the COVID-19 pandemic has thrown this unsettled area of law into sharp relief. Courts are split as to whether claims by prisoners in light of the COVID-19 pandemic are challenges to the fact or duration of confinement properly brought as a habeas claim, or challenges to the conditions of confinement which fall outside the core of habeas corpus.

(*Id.* at 2-3). Surveying the caselaw, *id.* at 3-5 (collecting cases), the Court found that even amongst those Courts that had concluded that COVID-19-related conditions-of-confinement claims *could* sound in habeas corpus, relief—in the form of release from custody—could only be granted under § 2254 if Petitioner alleged facts to support that "he is at substantial risk from contracting COVID-19 at USP-Tucson, that the conditions of his confinement giving rise to his alleged risk from COVID-19 cannot be remedied, and that he is likely to suffer irreparable harm absent release from prison." (*Id.* at 4-7). Accordingly, the Court provided Petitioner with an opportunity to amend his Petition to

TERMPSREF

- 2 -

attempt to assert such claim.[2]

After seeking several extensions of time, Petitioner has now filed an Amended § 2254 Petition (Doc. 10)[3] and supporting Memorandum (Doc. 15).

## II.     Amended Petition

After a trial by jury, Petitioner was convicted in Fulton County Superior Court in the State of Georgia of one count of malice murder, four counts of felony murder, two counts of aggravated assault on a peace officer, two counts of obstruction of a law enforcement officer, one count of aggravated battery on a peace officer, possession of a firearm by a convicted felon, and two counts of possession of a firearm in the commission of a felony.  *See Al Amin v. State*, 278 Ga. 74, 597 S.E.2d 332 (2004).  Petitioner was sentenced to life imprisonment without the possibility of parole.  *Id.*

In his Amended Petition, Petitioner asserts one ground for relief, alleging that

> the current and future conditions of his confinement arising and re-arising amidst the Covid-19 pandemic/current delta variant virus and entailing [illegible] variant virus [*sic*], cannot be remedied under any set of circumstances of confinement, which would constitutionally suffice to remedy Petitioner's risks of irreparable injury or death absent release from confinement.  Thus, Petitioner's continued confinement as a highly vulnerable inmate would impose upon him cruel and unusual punishment[] not initially imposed and would threate[n] and plausibly impede Petitioner's Fifth Amendment liberty guarantees under these unforeseen circumstances.

(Doc. 10 at 6).  As relief, Petitioner seeks "immediate/compassionate release." (*Id.* at 11).

In his Memorandum, Petitioner expands on his allegations, asserting that he is 78-

---

[2] The Court also noted that if Petitioner "believes that the conditions of his confinement *can* be remedied *without* being released from prison, he may file a *new*, *civil rights* action to seek injunctive relief (such as, for example, an order directing prison officials to vaccinate him or provide him with adequate personal protective equipment) to remedy any allegedly unconstitutional conditions of his confinement." (*Id.* at 7-8).

[3] In his original Petition, Petitioner properly named the "Warden" at "FCI-Tucson" as Respondent.  However, in his Amended Petition, Petitioner names only the Arizona Attorney General as an "Additional Respondent" and fails to name a primary Respondent to this action.  Because a petitioner for habeas corpus relief under 28 U.S.C. § 2254 must name the officer having custody of him as the respondent to the petition for this Court to have jurisdiction, *see* Rule 2(a), Rules Governing Section 2254 Cases; *Belgarde v. Montana*, 123 F.3d 1210, 1212 (9th Cir. 1997), the Court will substitute the originally named "Warden" at "FCI-Tucson" as Respondent to the Amended Petition. Fed. R. Civ. P. 25.

years old, and suffers from Sjogren syndrome, leukopenia, cryoglobulinemia, a decreased white blood cell count, monoclonal gammopathy, Hepatitis-B, and multiple myeloma, and that the combination of his age and these conditions place him at "high risk" of death from COVID.[4] Further, Petitioner asserts that he cannot escape this risk in prison because "staff enter prisoner's atmosphere daily," prisoners are confined in "close quarters," and it would be prohibitively expensive and time consuming to retrofit prison to meet social distancing and other mitigating requirements, implying that he is effectively trapped in a high risk environment. Petitioner further alleges that, as of February 2021, USP-Tucson had the "fifth highest number of inmate deaths from COVID-19 in the country," and the "seventh highest number of positive tests for COVID-19 in the country." Additionally, Petitioner alleges that the emergence of new, more contagious, and lethal variants of COVID-19 put him at increasing risk. Petitioner asserts that he has not been vaccinated "mainly due [to] his Muslim religious beliefs,"[5] and, citing sources of questionable veracity, because of concerns about side-effects from the vaccine.[6] As such, Petitioner requests that he be granted "compassionate release," a "reduction in sentence to time served," or "a release

---

[4] In an "Inmate Request" that Petitioner attaches to his Amended Petition, Petitioner further indicates that his myeloma "weakens his white cells and makes him more susceptible to the virus." (Doc. 15-1 at 5). Plaintiff also provides medical records documenting his health conditions. (*Id.* at 17-33).

[5] Specifically, Petitioner asserts that he "cannot take the vaccine shot [] because his religion (Muslim) prohibits the vaccine content" (Doc. 15-1 at 6), apparently in reference to the belief that the various vaccines contain or are produced using porcine- and/or fetal cell-derived products and are thus not halal.

[6] For example, Petitioner cites "recent reports" on the website "www.NaturalNews.com"—which includes articles such as "Medicine Wants to Kill You," and appears to exist mainly for the purpose of peddling products of dubious provenance such as "nascent iodine," "Hawaiian astaxanthin," and "colloidal silver mouthwash"—for the proposition that the vaccine "suppres[es] a person's T-cells" and "causes an 'uptick' in preexisting conditions such as HIV, mono, shingles, herpes, pulm[o]nary conditions, cardio conditions, and melanoma and other cancers...." Elsewhere, Petitioner states that "doctors" at "vaxxtr.com"—which does not appear to be an operable website—report that the vaccine "restructures your DNA, bone mar[row], brain cells, and pulmonary/coronary systems." Put simply, there is no scientific basis for these concerns, and the references are not credible. Indeed, "www.NaturalNews.com" disclaims that "[a]ll content on this site is commentary or opinion" that is meant for "entertainment purposes only" and "is not intended as a substitute for professional advice of any kind."

under extraordinary circumstances."

### III.     Discussion

As an initial matter, Petitioner's request that he be granted "compassionate release" is beyond this Court's jurisdiction. Petitioner seeks compassionate release "under "3582(c)(1)(A)(i)," apparently referring to 18 U.S.C. § 3582(c)(1)(A)(i). The plain text of § 3582, however, only provides for sentence reductions for *federal* prisoners. *See e.g.*, *United States v. Davis*, 961 F.3d 181, 183 (2d. Cir. 2020) (noting that "covered offenses" for purposes of the First Step Act include only certain "violation[s] of a *Federal* criminal statute.") (emphasis added). Although Petitioner is physically incarcerated at USP-Tucson—a federal prison—Petitioner is incarcerated pursuant to the judgment of a Georgia *state* court. Put another way, Petitioner is a *state*, not *federal*, prisoner.

Further, even if § 3582(c)(1)(A)(i) did apply to Petitioner, he has plainly failed to comply with the prerequisites for seeking such relief in this Court. Relief under § 3582(c)(1)(A)(i) requires a criminal defendant to first exhaust the Federal Bureau of Prisons (BOP) compassionate release process before moving the district court directly for relief. 28 U.S.C. § 3582(c)(1)(A). Exhaustion occurs when the BOP denies a defendant's application or lets 30 days pass without responding to it. *Id.* Petitioner states that he "never submitted an administrative request for compassionate relief to the BOP as he was unaware of this requirement." (Doc. 15 at 5). Although Petitioner also attaches an "Inmate Request" in which he "request[s] to be released on compassionate release," (Doc. 15-1 at 5), the Request is dated November 3, 2021, less than 30 days prior to him filing his Amended Petition. Accordingly, even assuming *arguendo* that § 3582(c)(1)(A)(i) applies to Petitioner, he has failed to comply with that statute's exhaustion requirements, and this Court is thus without jurisdiction to grant him compassionate release.

Petitioner also requests that his sentence be reduced to time served. Petitioner identifies no basis empowering a federal court to modify—as distinct from invalidating or

TERMPSREF

vacating—an otherwise legal sentence[7] of a state court, and this Court is aware of no such authority.

However, to the extent Petitioner seeks habeas corpus relief based upon the risks posed to him by the COVID-19 pandemic at USP-Tucson, the Court will require an answer to the Amended Petition. Petitioner is elderly with a myriad of health problems, conditions that the CDC has identified as placing him at the highest risk from COVID-19. Moreover, these conditions are immutable and cannot be remedied by injunction; the Court cannot, for instance, order that Petitioner become younger, or healthier. Similarly, Petitioner alleges that prison requires him to remain in "close quarters" with other inmates and guards despite COVID-19 spreading throughout USP-Tucson, and that it is not reasonably possible to retrofit the prison to comply with social distancing and other mitigation requirements.[8] Although Petitioner indicates that he has not been vaccinated, he states that his refusal stems from his religious convictions[9] and, less convincingly, from his concerns about side-effects from the vaccine. The Court notes that the BOP reports that more than 96%[10] of inmates at FCC-Tucson[11] have been fully vaccinated against COVID-19, and that

---

[7] Petitioner makes no allegation that there is any defect in his criminal sentence.

[8] Petitioner does not, however, address the possibility of transfer to other BOP facilities equipped to deal with prisoners with serious medical conditions, such as Federal Medical Centers.

[9] As such, any directive that Petitioner be vaccinated would put in the position of having to vindicate his Eighth Amendment rights by violating his First Amendment rights. Without additional briefing on whether the vaccines available to Petitioner are halal, and, if so, whether Petitioner would still have a religious objection to them, the Court is unwilling to place Petitioner in that position.

[10] Of the 1,577 inmates currently housed at FCC-Tucson, *see* footnote 9, *infra*, the BOP reports that 1,520 (96.4%) have been fully vaccinated. *See* Federal Bureau of Prisons "COVID-19 Vaccine Implementation" (*available at* https://www.bop.gov/coronavirus/index.jsp) (last visited June 15, 2021).

[11] FCC-Tucson consists of USP-Tucson, FCI-Tucson, and a small satellite camp adjacent to USP-Tucson. USP-Tucson currently houses 1,281 inmates, FCI-Tucson currently houses 193 inmates, and the satellite camp currently houses 103 inmates, for a total population at FCC-Tucson of 1,575 inmates. *See* BOP "USP Tucson" (*available at* https://www.bop.gov/locations/institutions/tcp/) (last visited November 19, 2021); *see also* BOP "FCI Tucson" (*available at* https://www.bop.gov/locations/institutions/tcn/) (last visited November 19, 2021).

there are currently no active COVID-19 cases among inmates at USP-Tucson (although there are two active cases among staff).[12] Despite this claimed vaccination rate—which is suspiciously high[13]—the BOP also reports that FCC-Tucson is nevertheless currently a "Level 3" facility, reflecting "intense modification" of operational levels and programs due to the risk of COVID-19 in the facility.[14] The Court is unable, at this juncture, to reconcile USP-Tucson's claimed vaccination rate with its simultaneous "intense modification" status, and although such "intense modification" might support that the BOP is responding to and managing the risks from COVID-19, and is thereby sufficiently mitigating the risks to Petitioner without releasing him, it nevertheless indicates that there is still a risk that requires "intense" response; presumably, if the risk was not great there would be no need for an "intense" response. As such, it appears that there is at least some, and possibly great, risk to Petitioner from the COVID-19 virus at USP-Tucson.

The Court is also mindful that 28 U.S.C. § 2254(b)(1) provides that habeas corpus relief "shall not be granted unless it appears that [] the applicant has exhausted the remedies available in the courts of the State; or [] there is an absence of available State corrective process; or [] circumstances exist that render such process ineffective to protect the rights of the applicant." At this early juncture, it is unclear whether Petitioner has exhausted his state court remedies, or whether such remedies are absent or otherwise ineffective to

---

[12] *See* Federal Bureau of Prisons "COVID-19 Cases" (*available at* https://www.bop.gov/coronavirus/index.jsp) (last visited November 19, 2021).

[13] The BOP's claimed vaccination rate for FCC-Tucson is considerably above both the Arizona statewide average (65.1%) and the average for Pima County (70.1%) where FCC-Tucson is located. *See* Arizona Dep't of Health Services "COVID-19 Vaccine Administration" (*available at* https://www.azdhs.gov/covid19/data/index.php#vaccine-admin) (last visited November 19, 2021).

[14] *See* Federal Bureau of Prisons "Modified Operational Levels" (*available at* https://www.bop.gov/coronavirus/index.jsp) (last visited November 19, 2021). The Court further notes that "Level Three" is only triggered when "medical isolation rates" are at least 7%, facility vaccination rates are below 50%, or community transmission rate is above 100 per 100,000 over the past seven days. *See* Federal Bureau of Prisons "BOP COVID-19 Operational Levels" (*available at* https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp#about_levels) (last visited November 19, 2021).

protect the rights Petitioner seeks to vindicate; indeed, it is not clear what action Petitioner could file in any *state* court seeking to remedy the conditions of his confinement in a *federal* prison. Respondents will be required to address whether § 2254(b)(1) precludes relief in this action, and, if so, how.

Accordingly, in sum, while the burden remains high for Petitioner to obtain habeas corpus relief in this action, the Court concludes that Petitioner has plausibly alleged a basis for such relief, and the Court will thus require an answer to the Amended § 2254 Petition.[15] The parties are also encouraged to consider whether they might be able to reach a satisfactory resolution of this matter in a manner that might be speedier than through judicial intervention.[16]

**IV.   Warnings**

    **A.   Address Changes**

If Petitioner's address changes, Petitioner must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Petitioner must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

    **B.   Copies**

Petitioner must serve Respondent, or counsel if an appearance has been entered, a copy of every document that Petitioner files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also,

---

[15] Ordinarily, a § 2254 petition would be answered by the Attorney General for the state in which the petitioner was convicted, as the representative of the state's prison department. Here, however, because Petitioner is not challenging his conviction or sentence, but it instead challenging the conditions of his confinement at USP-Tucson, it appears that the United States Attorney for the District of Arizona (USA-AZ)—as the representative of the BOP—would be the proper authority from whom to require an answer, subject to any filing to the contrary.

[16] The Court notes that 11 BOP facilities are currently listed as "Level 1" COVID-19 facilities (the lowest COVID-19 classification, requiring only "minimal modifications"), two of which—USP Coleman I, and USP Coleman II—are the same security classification as USP-Tucson. *See* Federal Bureau of Prisons "Modified Operational Levels" (*available at* https://www.bop.gov/coronavirus/index.jsp) (last visited November 19, 2021).

**TERMPSREF**

- 8 -

Petitioner must submit an additional copy of every filing for use by the Court. LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice.

### C.     Possible Dismissal

If Petitioner fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     The Clerk of Court is directed to reinstate the "Warden, FCI Tucson" as Respondent to this action.

(2)     The Clerk of Court must serve a copy of the Amended § 2254 Petition (Doc. 10), the Memorandum in Support (Doc. 15), and this Order on the warden of USP-Tucson, Catricia Howard, and the United States Attorney for the District of Arizona by certified mail addressed to the civil process clerk at the office of the United States Attorney pursuant to Rule 4(i)(1)(A) of the Federal Rules of Civil Procedure. The Clerk of Court must also send by certified mail a copy of the Summons, the Petition, and this Order to the United States Attorney General pursuant to Rule 4(i)(1)(B) **and** to Respondent pursuant to Rule 4(i)(2) of the Federal Rules of Civil Procedure.

(3)     Within 2 business days, the United States Attorney for the District of Arizona will acknowledge receipt of the Amended Petition and the Court's Order and within 5 business days will either file a notice of appearance on behalf of Respondent or will notify the Court of the names of the Respondents on whose behalf the United States Attorney for the District of Arizona will not accept service of process.

(4)     The United States Attorney for the District of Arizona or his designee has **20 days** from the date of service within which to answer the Amended § 2254 Petition. The United States Attorney or his designee must not file a dispositive motion in place of an answer. The United States Attorney or his designee may file an answer that (a) is limited to relevant affirmative defenses, including, but not limited to, statute of limitations,

1  procedural bar, or non-retroactivity; (b) raises affirmative defenses as to some claims and
2  discusses the merits of others; or (c) discusses the merits of all claims.  The failure to set
3  forth an affirmative defense regarding a claim in an answer may be treated as a waiver of
4  the defense as to that claim, *Day v. McDonough*, 547 U.S. 198, 209-11 (2006), but an
5  answer that is limited to affirmative defenses on a particular claim does not waive any
6  argument on the merits as to that claim.  If the answer only raises affirmative defenses,
7  only those portions of the record relevant to those defenses need be attached to the answer.
8  If not, the answer must fully comply with all the requirements of Rule 5 of the Rules
9  Governing Section 2254 Cases.

10     (5)   Regarding courtesy copies of documents for chambers, the United States
11 Attorney or his designee is directed to review Section II(D) of the Court's Electronic Case
12 Filing Administrative Policies and Procedures Manual, which requires that "a courtesy
13 copy of the filing, referencing the specific document number, **shall be printed directly**
14 **from CM/ECF**."   CM/ECF Admin. Man. § II(D)(3) (emphasis added).  *See*
15 http://www.azd.uscourts.gov/sites/default/files/documents/adm%20manual.pdf.

16     (6)   Petitioner may file a reply within **30 days** from the date of service of the
17 answer to the Amended § 2254 Petition.

18 . . . .
19 . . . .
20 . . . .
21 . . . .
22 . . . .
23 . . . .
24 . . . .
25 . . . .
26 . . . .
27 . . . .
28

**TERMPSREF**

(7)     This matter is referred to Magistrate Judge Maria S. Aguilera pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for further proceedings and a report and recommendation.

Dated this 9th day of December, 2021.

_____
Honorable John C. Hinderaker
United States District Judge

TERMPSREF