Christopher D. Thomas (010482)
Andrea J. Driggs (023633)
Perkins Coie LLP
2901 North Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
cthomas@perkinscoie.com
adriggs@perkinscoie.com
DocketPHX@perkinscoie.com

CHARLES D. SWIFT, TX Bar No. 24091964
*Pro Hac Vice* pending
Constitutional Law Center for Muslims in America
100 North Central Expressway, Suite 1010
Richardson, Texas 75080
Telephone: 972.914.2507
Facsimile: 972.692.7454
cswift@clcma.org

*Attorneys for Petitioner Jamil Al-Amin*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jamil Al-Amin,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>Danon Colbert, Acting Warden, USP Tucson, and Jane Doe, USP Tucson Supervisor for Prison Transfers<br><br>　　　　　Respondents. | No. CV-21-00200-TUC-JCH (MSA)<br><br>**SECOND AMENDED PETITION** |

Petitioner Jamil Abdullah Al-Amin ("Imam Jamil"), through undersigned counsel, submits his Second Amended Petition for declaratory judgement and relief pursuant to 28 U.S.C. §§ 1331, 2241, 2254; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1(c), and alleges:

**PROCEDURAL BACKGROUND**

1. This action was originally initiated *pro se* by Imam Jamil, a 78-year-old Muslim Imam who is confined in the United States Penitentiary in Tucson, Arizona (USP-Tucson). Imam Jamil, incarcerated pursuant to a State of Georgia conviction, filed his *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and also referenced 28 U.S.C. § 2241 as a basis for relief. He filed an Amended Petition (Doc. 10) on August 23, 2021, and a brief in support thereof (Doc. 15) on November 12, 2021.

2. Imam Jamil's original and amended petitions noted that he suffers from an enhanced risk of COVID-19 because of many ailments that he has including cataracts, mobility issues, multiple myeloma, sicca syndrome, cryoglobulinemia, aortic aneurism without rupture, enlarged prostate with lower urinary tract symptoms, urinary incontinence, abnormal tumor marks, colitis, enteritis, gastroenteritis, and history of hepatitis B, and hypertension. Imam Jamil sincerely believes that taking the COVID-19 vaccine, which is not halal, would violate his core religious beliefs.

3. On December 10, 2021, the Court concluded that Imam Jamil had plausibly alleged a basis for habeas corpus relief and ordered Respondent to Answer the Amended Petition. Respondent did so on January 24, 2022 (Doc. 27). In the meantime, on January 18, 2022, Georgia custodian Timothy Ward had sought leave to intervene (Doc. 25).

4. After undersigned counsel appeared on March 1, 2022 (Doc. 29), the Court issued its Order (Doc. 30) that petitioner indicate whether it intended to file a second amended petition and whether it opposed Georgia's motion for leave to intervene. Counsel indicated its intent to do so on March 25 (Doc. 31), at the same time noting it did not oppose intervention but that it was likely moot.

5. In this Second Amended Petition, Imam Jamil withdraws his request for release in favor of a request for a change in custody to minimize the risk posed to his health by the COVID-19 pandemic. As the Court's Order noted, the federal government maintains other facilities — also far closer to Imam Jamil's Georgia home — that also

would provide greater protection from COVID than has been the case historically at USP-Tucson. This Second Amended Petition also asserts claims based upon the retaliation against Imam Jamil following the Court's Order that Respondents answer the Amended Petition.

**PARTIES**

6. Petitioner Imam Jamil is an inmate in the custody of the Bureau of Prisons. He is currently housed at USP Tucson.

7. Respondent Danon Colbert is the Acting Warden of FCI Tucson. Respondent Jane Doe is the FCI Tucson's Supervisor for Prison Transfers. Respondents are sued in their individual and official capacities, as appropriate to each ground.

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over this matter for Ground A (habeas conditions of confinement for state prisoner for which there is an absence of available State corrective process) under 28 U.S.C. § 2254.

9. This Court has jurisdiction over Ground B pursuant to *Bivens*.

10. In the alternative, this Court has jurisdiction over Ground C (habeas conditions of confinement) under 28 U.S.C. § 2241.

11. This Court has jurisdiction for Ground 4 under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-1(c).

12. This Court has jurisdiction under 28 U.S.C. § 1331 for all grounds.

13. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the RFRA, 42 U.S.C. § 2000bb-1(c).

14. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this judicial district. Venue is also proper in the United States District Court for the District of Arizona, which is the judicial district where Petitioner is currently in custody. *Braden v. 30th Jud. Cir. Ct.*, 410 U.S. 484, 493–500 (1973).

## STATEMENT OF FACTS

15. The Centers for Disease Control and Prevention (CDC) determined that COVID-19 spreads mainly through person-to-person contact.

16. Person-to-person contact occurs between persons in close contact — about 6 feet — with one another, through respiratory droplets produced when an infected person coughs or sneezes.

17. The droplets land in the mouth or nose or are inhaled into the lungs of people who are within about 6 feet of the infected person.

18. COVID-19 can survive up to three days on various surfaces. COVID-19 is highly contagious and has a mortality rate ten times greater than influenza. People infected with the coronavirus can be asymptomatic during the two-to-fourteen-day COVID-19 incubation period. During that asymptomatic incubation period, infected people are, unknowingly, capable of spreading COVID-19.

19. The CDC identifies that, "older adults are more likely to get very sick from COVID-19. Getting "very sick" means that older adults with COVID-19 might need hospitalization, intensive care, or a ventilator to help them breathe. Older adults are also at higher risk of death from COVID-19. The risk increases for people in their 50s and increases exponentially for people in their 60s, 70s, and 80s.[1]

20. Petitioner suffers from multiple myeloma cancer and immunodeficiencies. The CDC states that these specific medical conditions put individuals at a higher risk of developing severe illness with COVID-19.[2]

21. Petitioner also suffers from significant vision impairment. The CDC states that this type of disability may make an individual more likely to get very sick from COVID-19 (including because of difficulties living in congregate settings).

22. Petitioner is at particular risk because he is 78 years old and suffers from:

---

[1] https://www.cdc.gov/aging/covid19/covid19-older-adults.html
[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#:~:text=Cancer,cancer%20may%20increase%20your%20risk.

  a. multiple myeloma cancer;

  b. Sjogren syndrome;

  c. Leukopenia;

  d. cryoglobulinemia, a decreased white blood cell count;

  e. monoclonal gammopathy; and

  f. Hepatitis-B.

23. Petitioner is at additional risk of severe illness or death from COVID-19 because he cannot be vaccinated due to his sincerely held religious beliefs

24. USP- Tucson presents a heightened risk to Petitioner because it remains one of the BOP facilities with active COVID-19 cases among prison staff and inmates.

25. USP-Tucson is listed as a "Level 2" facility reflecting "moderate modification" of operational levels and programs due to the risk of COVID-19 in the facility, although the published data was viewed with some skepticism by the Court itself in its December 10 Order.

**Reprisal**

26. There is likewise ample evidence that USP-Tucson is particularly ill-suited to care for Imam Jamil. He was previously obliged to file suit against USP-Tucson after the facility's refusal to address his deteriorating eyesight left him functionally blind in both eyes. *See Al-Amin v. Warden Catricia Howard*, Complaint, Doc. 1, No. 4:21-cv-00120 (D. Ariz. Mar. 19, 2021). Ironically, Respondent asserted in that case that it was unable to schedule necessary cataract surgery because of covid risks associated with USP-Tucson.

27. More disturbing, shortly after the Court issued its December 10, 2021 Order, Officers came to Imam Jamil's cell late at night and told him to take all of his belongings because he was going into quarantine.  There were no indications that he had been exposed to COVID-19, and he had not tested positive for the virus.

28. He was then taken to a unit in the prison that had not been used for an extended period. The unit was filthy, and the floor was covered with dead, decomposing insects. For fourteen days, Imam Jamil remained housed in this unit, denied access to phone calls and mail and served meals cold. There was no socializing while in quarantine as Petitioner was denied all forms of social interaction available to him in his normal cell.

29. Making matter worse, the prison then brought to the same unit for quarantine other inmates who had contracted the virus. That is, Respondents deliberately housed an unvaccinated 78-year-old with no indication of COVID in a disused unit into which COVID-positive inmates were later added.

30. Imam Jamil cannot escape the risk of infection because staff enter prisoners' atmosphere daily, prisoners are confined in close quarters, and it would be prohibitively expensive and time consuming to retrofit prison to meet social distancing requirements.

**Petitioner has exhausted administrative remedies and further attempts are futile**

31. Imam Jamil has satisfied any obligation to exhaust administrative remedies. On November 4, 2021, he sent through counsel a letter to the Warden and USAO for the District of Arizona requesting to be transferred from USP Tucson to USP Atlanta, FCI Jesup, FCI Coleman Medium, or FCI Marianna pursuant to 18 U.S.C. § 3621(b). He also requested that he be transferred to a medium security facility.

32. On November 3, 2021 Imam Jamil himself filed an "Inmate Request" to be released on compassionate release.

33. Imam Jamil and his counsel have made multiple requests for release and for prison transfers; the prison has ignored all of them to date.

34. Imam Jamil's request is ripe for decision, as further attempts within the prison's administrative process would be futile. *See Helling v. McKinney*, 509 U.S. 25, 33, (1993) (stating a prison inmate should be able to "complain about demonstrably unsafe drinking water without waiting for an attack of dysentery" and a "remedy for unsafe conditions need not await a tragic event[.]")

## GROUNDS/CAUSES OF ACTION

**A.  Petitioner Is Subject To Unconstitutional Conditions of Confinement In Violation Of The Eighth Amendment To The U.S. Constitution And Is Entitled To Relief Under 28 U.S.C. § 2254(b)(1)(B)(i).**

35. Imam Jamil incorporates every allegation contained above.

36. Imam Jamil is confined based on state court proceedings and held in federal custody.

37. This Court has jurisdiction over this claim under 28 U.S.C. § 2254(b)(1)(B)(i), which states that an application for a writ of habeas corpus of a state prisoner shall not be granted unless, "there is an absence of available State corrective process."

38. Petitioner's unique status has provided him with no process or alternative to challenge the Eighth Amendment violations of his custody.

39. Petitioner has made multiple requests for release and for transfer to more appropriate facilities, Respondent has not addressed these requests. No other process is available.

40. Under the Eighth Amendment, individuals in prison have the right to be free from cruel and unusual punishment. The government has the responsibility of protecting incarcerated people from the substantial risk of serious harm to their health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Specifically, the government has an "obligation to provide medical care for those whom it is punishing by incarceration" and the failure to meet that obligation can be an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 103–105 (1976).

41. While the Constitution "does not mandate comfortable prisons," it does mandate humane ones. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Under the Eighth Amendment, prison officials "must provide humane conditions of confinement [and] . . . must ensure that inmates receive adequate food, clothing, shelter, and medical

1  care and must "take reasonable measures to guarantee the safety of the inmates[.]"
2  *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

3    42.   A prisoner can establish an Eighth Amendment violation by showing that he
4  or she has a serious medical need and that there was a deliberate indifference to this need.
5  *Estelle*, 429 U.S. at 103–105.

6    43.   The Supreme Court has recognized, "[t]hat the Eighth Amendment protects
7  against future harm to inmates is not a novel proposition." *Helling v. McKinney*, 509 U.S.
8  25, 33, (1993). *Helling* "squarely rejected" the proposition that "only deliberate
9  indifference to current serious health problems of inmates is actionable under the Eighth
10 Amendment." *Parsons v. Ryan*, 754 F.3d 657, 676–77 (9th Cir. 2014) (citation omitted).

11   44.   Respondent's deliberate indifference to the risk posed by COVID-19 to the
12 Petitioner constitutes an Eighth Amendment violation. Respondents continue to house
13 Petitioner in conditions that increase his risk for contracting COVID-19 and developing
14 serious illness.

15   45.   Transfer to a Level 1 facility with a higher rate of vaccinated prisoners
16 significantly reduces the risk of Petitioner contracting COVID-19. Further, transferring to
17 such a facility increases the likelihood of effective care should he contract COVID-19.

**B.  Petitioner Is Subject To Unconstitutional Conditions In Violation Of The Eighth Amendment To The U.S. Constitution And Is Entitled To Relief Under *Bivens***

21   46.   Petitioner incorporates every allegation above.
22   47.   In the alternative to Ground 1, Imam Jamil seeks declaratory judgement and
23 relief against Respondents in their individual capacity pursuant to *Bivens v. Six Unknown*
24 *Agents*.

25   48.   Under the Eighth Amendment, individuals in prison have the right to be free
26 from cruel and unusual punishment. The government has the responsibility of protecting
27 incarcerated people from the substantial risk of serious harm to their health and safety. *See*
28 *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Specifically, the government has an

"obligation to provide medical care for those whom it is punishing by incarceration" and the failure to meet that obligation can be an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 103–105 (1976).

49. Under the Eighth Amendment, prison officials "must provide humane conditions of confinement [and] . . . must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates[.]" *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

50. A prisoner can establish an Eighth Amendment violation by showing that he or she has a serious medical need and that there was a deliberate indifference to this need. *Estelle*, 429 U.S. at 103–105.

51. The Supreme Court has recognized, "[t]hat the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling v. McKinney*, 509 U.S. 25, 33, (1993).

52. Respondent's deliberate indifference to the risk posed by COVID to the Petitioner constitutes an Eighth Amendment violation. Respondent continue to house Petitioner in conditions that increase his frisk for contracting COVID and developing serious illness.

53. Transfer to a Level 1 facility with a high rate of vaccinated prisoners significantly reduces the risk of Petitioner contracting COVID. Further, transferring to such a facility increases the likelihood of effective care should he contract COVID-19.

    **C.**     **Petitioner Is Subject To Unconstitutional Conditions In Violation Of The Eighth Amendment To The U.S. Constitution And Is Entitled To A Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241.**

54. Petitioner incorporates every allegation made above.

55. In the alternative, this Court has jurisdiction over Petitioner's habeas corpus claim because the Supreme Court has not excluded such claims from the province of habeas corpus. *See Boumediene v. Bush*, 553 U.S. 723, 792 (2008) (The Supreme Court

1 declining to determine "the reach of the writ with respect to claims of unlawful conditions
2 of treatment or confinement"); *Bell v. Wolfish*, 441 U.S. 520, 526, n.6 (1979) (leaving for
3 "another day the question of the propriety of using a writ of habeas corpus to obtain
4 review of the conditions of confinement").

5       56.    Under the Eighth Amendment, individuals in prison have the right to be free
6 from cruel and unusual punishment. The government has the responsibility of protecting
7 incarcerated people from the substantial risk of serious harm to their health and safety. *See*
8 *Farmer v.* Brennan, 511 U.S. 825, 828 (1994). Specifically, the government has an
9 "obligation to provide medical care for those whom it is punishing by incarceration" and
10 the failure to meet that obligation can be an Eighth Amendment violation. *Estelle v.*
11 *Gamble*, 429 U.S. 97, 103–105 (1976).

12       57.    While the Constitution "does not mandate comfortable prisons," it does
13 mandate humane ones. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Under the
14 Eighth Amendment, prison officials "must provide humane conditions of confinement
15 [and] . . . must ensure that inmates receive adequate food, clothing, shelter and medical
16 care, and must "take reasonable measures to guarantee the safety of the inmates[.]"
17 *Farmer*, 511 U.S. at 832 (citing *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

18       58.    A prisoner can establish an Eighth Amendment violation by showing that he
19 or she has a serious medical need and that there was a deliberate indifference to this need.
20 *Estelle*, 429 U.S. at 103–105.

21       59.    Respondent's deliberate indifference to the risk posed by COVID to the
22 Petitioner constitutes an Eighth Amendment violation. Respondent continue to house
23 Petitioner in conditions that increase his frisk for contracting COVID and developing
24 serious illness.

25       60.    Transfer to a Level 1 facility with a high rate of vaccinated prisoners
26 significantly reduces the risk of Petitioner contracting COVID. Further, transferring to
27 such a facility increases the likelihood of effective care should he contract COVID-19.
28

**D.     Retaliation in Violation of Plaintiff's Fifth Amendment Rights**

61.     Petitioner incorporates every allegation contained in the paragraphs above.

62.     On December 10, 2021, this Court ordered Respondent to answer Petitioner's Amended Complaint noting that Petitioner had plausibly alleged a basis for habeas corpus relief.

63.     Shortly after this Order was filed, Respondent removed Petitioner from his cell and took him to an unused unit that was unsanitary and filled with dead bugs.

64.     Petitioner had not contracted COVID-19 and did not test positive, but was kept in isolation in this unit for fourteen days. During that time, other inmates who had contracted the COVID-19 virus were also brought to Petitioner's unit, thus increasing Petitioner's risk and exposure to the virus.

65.     Petitioner was not allowed to socialize, meals were brought cold, and he was not able to communicate with his family or receive letters.

66.     By filing a Petition and an Amended Petition for habeas corpus relief against dangerous COVID-19 prison conditions, Petitioner repeatedly and validly exercised his right to due process under the Fifth Amendment. Respondent reacted to Petitioner's Amended Complaint and the Court's requirement that Respondent answer the Complaint by placing Petitioner in a fourteen-day isolation in unsanitary and potentially dangerous conditions. In doing that, Respondent forced Petitioner to choose between his Fifth Amendment right to pursue his Complaint and his interest in his health and life. Respondent knowingly, intentionally, and unlawfully retaliated against Petitioner for the exercise of his constitutional rights.

67.     Respondents, acting in their official capacity and under color of authority, were responsible for implementing or supervising Petitioner's fourteen-day isolation in an unlawful retaliation against Petitioner for exercising his constitutionally protected rights, in violation of the Fifth Amendment to the United States Constitution.

68. Petitioner remains in USP-Tucson and intends to continue exercising his right to due process by pursuing this action for relief.

69. Absent relief, Petitioner believes he will suffer additional retaliatory placement in dangerous and unsanitary isolation.

70. Respondent's unlawful actions imposed an immediate harm to Petitioner and have caused Petitioner deprivation of his constitutional rights and emotional distress.

### E. Violation of the Religious Freedom Restoration Act (RFRA)

71. Imam Jamil incorporates by reference each allegation contained in the paragraphs above.

72. Imam Jamil sincerely believes that taking the COVID-19 vaccine would violate his core religious beliefs because it contains porcine and/or fetal products which are not halal (not permissible under Islamic dietary restrictions). This is a fundamental and important tenet of his religious beliefs because restrictions in Islamic diet (non-halal substances) are understood to be a divine obligatory prescription for all Muslims.

73. Respondent's facility places Imam Jamil at risk of severe illness or death because of its Level 2 status and lack of appropriate medical facilities, as well as Petitioner's serious medical conditions, age, and unvaccinated status. There are other facilities rated at Level 1 for COVID-19.

74. Respondents force Imam Jamil into an impermissible choice between, on the one hand, obeying his sincerely held religious belief and being subjected to constant risk to his health and life at a high-risk facility, or, on the other hand, violating his sincerely held religious beliefs in order to be safe. By forcing Petitioner into this impermissible choice between his sincerely held religious belief and the threat of serious illness or death from COVID-19, as well as the threat of retaliation, Respondents place a substantial burden on Plaintiff's exercise of his sincerely held religious beliefs in violation of RFRA, 42 U.S.C. § 2000bb-1(a).

75. Respondent and the United States government have no compelling interest in requiring Petitioner to remain in a higher risk facility with limited access to medical care. (Requiring Plaintiffs to inform on their religious communities is not the least restrictive means of furthering any compelling governmental interest).

76. By keeping Imam Jamil at USP-Tucson as an elderly, unvaccinated person with multiple risk factors for COVID-19 and resorting to retaliatory use of isolation to deter Petitioner from pursuing this action, Respondents substantially burdened Petitioner's sincerely held religious belief in violation of RFRA.

77. Imam Jamil's refusal to receive the COVID-19 vaccine for sincerely held religious reasons does not relieve Respondents' responsibility to provide the safest available conditions of confinement for Petitioner.

78. Respondents' actions create an immediate and ongoing risk of serious harm to Petitioner and have caused him emotional distress and deprivation of his constitutional rights.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner Imam Jamil prays that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Issue a declaratory judgment and preliminary injunction ordering Respondent to transfer Petitioner to a Level 1 COVID prison with a medical facility (Level 4);

3. In the alternative, issue Petitioner a writ of habeas corpus ordering Respondent to transfer Petitioner to a Level 1 COVID prison with a medical facility (Level 4).

Dated: April 25, 2022

**PERKINS COIE LLP**

By: /s/ Christopher D. Thomas
    Christopher D. Thomas
    Andrea J. Driggs
    2901 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012-2788

CHARLES D. SWIFT
Constitutional Law Center for
Muslims in America
100 North Central Expressway, Suite 1010
Richardson, Texas 75080

Attorneys for Petitioner

# CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2022, I electronically transmitted the attached document to the Clerk's Office using CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael Linton
Assistant United States Attorney
United States Attorneys' Office
United States Courthouse
405 West Congress Street, Suite 4800
Tucson, AZ 85701
Michael.linton@usdoj.gov

*Attorneys for Respondents*

Paula K. Smith
Senior Assistant Attorney General
Georgia Department of Law
40 Capital Square SW
Atlanta, GA 30334
psmith@law.ga.gov

*Attorney for Intervenor, Timothy Ward*

/s/ Shawne Murphy
156714826.1